UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN CORNELL,<br><br>    Plaintiff,<br><br>    v.<br><br>COLUMBUS MCKINNON CORPORATION, et al.,<br><br>    Defendants. | Case No. 13-cv-02188-SI<br><br>**ORDER DENYING MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES**<br><br>Re: Dkt. No. 83 |

Non-party Federal Express Corporation, plaintiff's employer at the time of the accident which is at the center of this litigation, has filed a motion for attorneys' fees, costs, and expenses. The motion is currently set for argument on August 13, 2015. Docket No. 83. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby **VACATES** the hearing. For the reasons stated below, the Court **DENIES** FedEx's motion.

**BACKGROUND**

On February 11, 2013, plaintiff filed a complaint against Columbus McKinnon Corporation, American Lifts, Inc., Autoquip, and Does 1-200, alleging he was injured while performing his usual work duties for Federal Express at the Oakland Hub at Oakland International Airport. Compl. ¶ 3. The complaint, filed in Alameda County Superior Court, alleges that on February 16, 2011, his foot was crushed while he used a scissor lift cargo moving system, and that the injury was caused by defects in the design and/or manufacture of the system. Compl. ¶ 12.

Plaintiff alleges that his injury caused permanent damage to his person, body and health, "including but not limited to severe injuries to muscle, bone, tissue and nerves." Compl. ¶¶ 12, 19. Plaintiff alleges that as a result of defendants' conduct, plaintiff needed to employ the services of hospital, surgeons, physicians, and nurses, which led to medical, hospital, professional, and incidental expenses. Compl. ¶ 20. Plaintiff believes he will necessarily incur additional expenses for an indefinite period into the future. *Id.* Plaintiff also claims to have suffered continuous chronic pain, suffering, anxiety, and emotional distress. Compl ¶ 21. Finally, plaintiff claims he sustained a loss of earning capacity because he is now prevented from attending to his usual occupation for an unforeseeable time into the future. Compl. ¶ 22.

On July 17, 2013, the Court denied plaintiff's motion to remand. Docket No. 24. On May 29, 2014, plaintiff filed a first amended complaint ("FAC") to add an additional defendant, Yale International, Inc. Docket No. 40. On May 29, 2015, the Court denied plaintiff's motion to amend the FAC. Docket No. 78.

On November 10, 2014, the Court resolved a discovery dispute initiated by FedEx, a non-party, against the parties to this action. FedEx had refused to respond to any further discovery propounded by the parties absent cost-shifting pursuant to Rule 45. In its order, the Court ordered FedEx to comply with the parties' pending discovery requests, and deferred ruling on the issue of cost-shifting, noting:

> Once all discovery has been produced, FedEx may file a motion for cost shifting. The Court may then rely on the developed record to determine whether significant expenses have indeed been reasonably incurred. FedEx's assertion that it will incur $75,000 in future expenses is unsupported by any independent facts or data, and does not provide a proper basis for making such a determination at this time.

Docket No. 58 at 3-4.

Having reached the conclusion of fact-discovery, FedEx now makes a renewed motion for cost-shifting pursuant to Rule 45. It requests to be reimbursed for $227,597 in attorneys' fees

2

related to compliance with the parties' discovery requests.

## LEGAL STANDARD

Rule 45(d)(2)(B)(ii) requires that when a court orders compliance with a subpoena over an objection, "the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). The Rule was amended in 1991 to "enlarge the protections afforded persons who are required to assist the court by giving information or evidence." Fed. R. Civ. P. 45, Advisory Committee Notes.

Prior to the Amendments, the rule allotted courts broad discretion in deciding whether to shift costs. However, in its current incarnation, Rule 45 is more directive. "[W]hen discovery is ordered against a non-party, the only question before the court in considering whether to shift costs is whether the subpoena imposes significant expense on the non-party." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) (citing *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001)); *see also In re Law Firms of McCourts & McGrigor Donald*, No. M. 19-96 (JSM), 2001 WL 345233, at *1 (S.D.N.Y. Apr. 9, 2001) ("The discretion which the district court had to alleviate non-party costs under the old Rule [45] bec[ame] mandatory under the 1991 amendments.") (internal citations and quotations omitted). However, upon finding that costs are significant, a court should not automatically shift all of the costs incurred. Instead, the rule requires the court to "order the party seeking discovery to bear at least enough of the cost of compliance to render the remainder 'non-significant.'" *Legal Voice*, 738 F.3d at 1184 (citing *Linder*, 251 F.3d at 182).

While "[t]he shifting of significant expenses is mandatory, . . . the analysis is not mechanical; neither the Federal Rules nor the Ninth Circuit has defined 'significant expenses,' which is a term that readily lends itself to myriad interpretations depending on the circumstances of a particular case." *United States v. McGraw-Hill Companies, Inc.*, 302 F.R.D. 532, 536 (C.D. Cal. 2014). "What constitutes a 'significant' cost is at the discretion of the district court." *Callwave Commc'ns, LLC v. Wavemarket, Inc.*, No. C 14-80112 JSW (LB), 2014 WL 2918218, at

\*3 (N.D. Cal. June 26, 2014). In making this determination, a court may "take into account the financial ability of the non-party to bear some costs" for purposes of establishing whether expenses are "significant." *Linder* 251 F.3d at 182; *see also McGraw-Hill* No. CV 13-0779-DOC JCGX, 2014 WL 3810328, at \*4 ("This consideration makes practical sense – an expense might be 'significant,' for instance, to a small family-run business, while being 'insignificant' to a global financial institution.").

Prior to the 1991 Amendments – when the cost shifting inquiry was discretionary – courts relied on a multi-factor test to determine whether to shift costs. These factors were "[1] whether the non-party actually has an interest in the outcome of the case, [2] whether the non-party can more readily bear its costs than the requesting party, and [3] whether the litigation is of public importance."[1] *Linder*, 251 F.3d at 182 (internal citations omitted). Many courts have found that this test retains its vitality even after the Amendments, and have used to it to determine whether costs are "significant," and thus trigger mandatory cost shifting. *In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992) ("While the drafters of new Rule 45 clearly intended to expand the protection for non-parties such as disinterested expert witnesses, *see* Advisory Committee Note to 1991 Amendment, there is no indication that they also intended to overrule prior Rule 45 case law, under which a non-party can be required to bear some or all of its expenses where the equities of a particular case demand it."); *see also Linder*, 251 F.3d at 182; *Callwave*, 2014 WL 2918218, at \*3, nt. 3; *Stormans Inc. v. Selecky,* No. C07-5374 RBL, 2015 WL 224914, at \*6 (W.D. Wash. Jan. 15, 2015).

However, at least one district court in this circuit has taken a different approach. In *McGraw-Hill* the court reasoned that that the multi-factor test was intended to guide courts' broad discretion on whether to shift costs at all, and is therefore ill-suited to today's Rule 45 analysis

---

[1] The Ninth Circuit also identified four additional factors which *may* be considered: (1) the scope of the discovery; (2) the invasiveness of the request; (3) the extent to which the producing party must separate responsive information from privileged or irrelevant material; and (4) the reasonableness of the costs of production. *United States v. Columbia Broadcasting System, Inc.*, 666 F.2d 364, 371 nt. 9 (9th Cir.1982).

4

which asks courts to focus solely on whether costs are "significant." 302 F.R.D. at 534-36. The *McGraw-Hill* order highlights that the pre-1991 rule did not even use the term "significant," but rather asked courts to determine whether the costs were "unreasonable or oppressive." *Id.* at 535. It also notes that a number of the factors simply do not touch on whether costs are significant. *Id.* ("Absent a strained definition of 'significant,' for example, a non-party's expenses are not made less significant by the fact that the litigation is important to the general public.").

The Court finds the reasoning in *McGraw-Hill* to be compelling. The Rule 45 inquiry has evolved from one which invited equitable balancing to guide courts' broad discretion, to one which seeks to shift costs as a matter of course upon a finding that they are "significant." Pre-1991 case law – while still instructive to the extent it bears of the question of significance – did not contemplate the Rule's revitalization, and therefore should not be applied wholesale, without further analysis.[2]

## DISCUSSION

FedEx's motion presents an anomalous case for the application of amended Rule 45, since here FedEx, the "non-party" seeking relief from the cost of compliance with discovery, actually has an interest in the outcome of the case that may well be as great as that of the parties. FedEx, as plaintiff's employer at the time of the accident, has filed a lien against any judgment or settlement in plaintiff's favor in order to recoup worker's compensation benefits it has paid to him. As of April 15, 2015, this lien totaled $233,173. Docket No. 65. The lien has grown rapidly over the past 18 months and will continue to grow concomitantly with plaintiff's medical costs and disability benefits, which do not appear to be abating in light of the seriousness of the injury he sustained. *See* Docket Nos. 32, 47, 62 (On January 24, 2014 the lien was $135,504; on July 21, 2014 it was $158,715, on February 12, 2015 it was $200,185). Should plaintiff prevail in this action, FedEx is likely to recover more than its cost of compliance with the parties' discovery requests. Additionally, plaintiff was a FedEx employee, working at a FedEx facility at the time of

---

[2] In any event, the Court finds that employing the analysis used in pre-1991 cases would not affect the ultimate outcome in this case.

5

the injury. While slightly more attenuated than its direct financial interest, the outcome of this case could also affect FedEx's employee training, safety policies, and future exposure to liability.

FedEx's interest in this case is therefore tantamount to that of a party, and it plausibly had standing to intervene in this action. *See* Fed. R. Civ. P. 24. FedEx is quite unlike the type of "non-party" entity that Congress envisioned it was protecting when it amended Rule 45. *See In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992) (listing "*disinterested* expert witnesses" as an example of the class of people Congress meant to protect when enacting the 1991 amendments) (emphasis added). FedEx's direct stake in the outcome of this case – namely, the prospect of recouping more than its cost of compliance – effectively renders the discovery expenses involved here far less "significant" to FedEx. *See Selecky*, 2015 WL 224914, at *7 (finding, on remand from the Ninth Circuit, that a non-party that has "a considerable interest in the outcome of the underlying case" should bear more of the costs related to compliance with parties' discovery).

Whether an expense is "significant" must be analyzed in light of the non-party's ability to pay. *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) (citing *Linder* 251 F.3d at 182). The parties point to FedEx's status as a large multinational corporation that is ranked 65th on the Fortune 500, and recorded net income of $2.57 billion in 2015. Opp'n at 8. FedEx counters that a non-party's ability to absorb costs should not be outcome-determinative, and should not be "mechanically applied to deny costs to any large corporation." Rep. at 1-2. FedEx is correct to argue that this factor is not dispositive in every instance. However, in this particular case, the discovery costs are dwarfed by FedEx's profit figures, and therefore weigh in favor of finding them insignificant. *Cf. Selecky*, 2015 WL 224914, at *7 (finding, on remand from the Ninth Circuit, that $5,000 was a non-significant sum that a small legal aid not-for-profit could bear).[3]

The parties and FedEx also engage in vituperative argument about the size of, and reason for, the costs incurred by FedEx. The parties argue that the costs do not "result from compliance," and are therefore not compensable under Rule 45. *McGraw-Hill*, 302 F.R.D. at 536 (C.D. Cal.

---

[3] As the parties note in their Opposition, $5000 "represented almost 15% of [the non-profit's] operating margin for the year. FedEx's claimed costs are about 1/100th of [1%] of its profit." Opp'n at 8.

2014) ("unnecessary or unduly expensive services do not 'result from compliance' and, therefore, do not count as "expenses."); *see also In re Application of Michael Wilson & Partners, Ltd., for Judicial Assistance Pursuant to 28 U.S.C. 1782*, 520 F. App'x 736, 741 (10th Cir. 2013). Specifically, they complain that FedEx unnecessarily increased the cost of discovery, and present a litany of instances which they characterize as FedEx engaging in "foot-dragging and obfuscation, despite having easy access to responsive documents," and suggest that this conduct would be sanctionable were FedEx a party to this action. Opp'n at 1, 4-7. FedEx responds by rebutting the specific instances of misconduct described by the parties, and asserting that the parties were "willing to mislead the court and outright lie to avoid reimbursing FedEx for [its cost of compliance]." Rep. at 6-13. The parties further suggest that FedEx's attorney fees are inflated and should be reduced by forty-percent to reflect prevailing rates in Memphis, TN rather than San Francisco, CA, because its legal work was performed by in-house counsel in Memphis. *Id.* at 16-17. FedEx responds that as a result of the demands placed upon it by this action, it had to outsource more work to a San Francisco-based firm in an unrelated case and should therefore be compensated based on this lost opportunity-cost.

Without taking sides in the *ex post facto* dogfight, the Court recognizes that discovery compliance was unusually hard fought by FedEx, which suggests that it may have unnecessarily increased the cost of compliance. *See e.g.* Docket No. 58 (FedEx previously filed a motion with the Court to oppose the production of a spreadsheet it already had in its possession which was discoverable under Rule 26). Additionally, that its requested fees of $227,597 so far outstrip its earlier projection of $75,000 provides a further indicium that at least a portion of these costs may not have been reasonably incurred from compliance.

While "[t]here are relatively few reported cases applying the new Rule 45," the weight of the case law makes clear that determining what constitutes a "significant cost" is a relative, not an absolute, inquiry. *Linder*, 251 F.3d at 182. Rather than looking to the cost of compliance in a vacuum, courts must evaluate that cost in light of all the relevant facts and circumstances in order to "protect[]…persons who are required to assist the court by giving information or evidence" from incurring significant expense. Fed. R. Civ. P. 45, Advisory Committee Notes. Therefore,

"Rule 45 does not cut a blank check to non-parties," but only ensures that they will not be saddled with significant costs. *McGraw-Hill*, 302 F.R.D. at 536. "Thus, a non-party may be required to bear some *or all* of its costs, depending upon the circumstances." *Kwong Mei Lan Mirana v. Battery Tai-Shing Corp.*, No. C 08-80142MISC.JFRS, 2009 WL 290459, at *4 (N.D. Cal. Feb. 5, 2009) (emphasis added).

Chief among the factors to be considered in this analysis is the extent to which the non-party has an interest in the outcome of the case. The Rule is aimed at protecting persons who are disinterested, and thus have little to gain from their outlays in compliance cost – such as when "a non-party [is] required to provide a list of class members." Fed. R. Civ. P. 45, Advisory Committee Notes. While FedEx is nominally a non-party, its interest in the outcome of this case rivals that of the parties'. Given this dynamic, FedEx's motion comes close to wielding the shield of Rule 45 as a sword. The Rule was meant to protect those who are "powerless to control the scope of litigation and discovery, and should [therefore] not be forced to subsidize an unreasonable share of the costs of a litigation" that does not concern them. *CBS*, 666 F.2d at 371 (9th Cir. 1982). It was not intended as a mechanism for entities which stand to benefit from certain litigation outcomes to evade discovery costs arising from their involvement in the underlying acts that gave rise to the lawsuit. *See Tutor-Saliba Corp. v. United States*, 32 Fed. Cl. 609, 610, nt. 5 (1995) (the fact that the non-party was "substantially involved in the underlying transaction and could have anticipated that [its involvement might] reasonably spawn some litigation, and discovery" was a circumstance weighing against shifting costs).

Therefore, given FedEx's direct interest in the outcome of the litigation, and its ability to "bear some costs," *Linder* 251 F.3d at 182, the Court cannot conclude that the expenses it incurred imposed a significant burden warranting Rule 45's protections. *See Wells Fargo Bank, N.A. v. Konover*, 259 F.R.D. 206, 207 (D. Conn. 2009) (denying non-party's Rule 45 motion because it "is not a truly disinterested party entitled to invoke the protections of Rule 45."); *see also United States v. Blue Cross Blue Shield of Michigan*, No. 10-CV-14155, 2012 WL 4838987, at *4 (E.D. Mich. Oct. 11, 2012) (non-party required to bear 85% of the cost of compliance where it had some interest in the outcome of the case). Accordingly, the Court **DENIES** FedEx's motion for cost

shifting.

**IT IS SO ORDERED.**

Dated: August 11, 2015

_____
SUSAN ILLSTON
United States District Judge